# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURY ADAMOV, individually, and on behalf of himself and all other similarly situated current and former employees of PricewaterhouseCoopers LLP,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP, a Limited Liability Partnership,<br><br>Defendant. | No. 2:13-cv-01222-TLN-AC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court pursuant to Defendant PricewaterhouseCoopers LLP's ("PwC") Motion for Summary Judgment. (ECF No. 58.) Plaintiff Yury Adamov ("Plaintiff"), individually, and on behalf of himself and all other similarly situated current and former employees of PwC, filed an opposition, (ECF No. 60), and PwC filed a reply, (ECF No. 61). For the reasons set forth below, the Court GRANTS PwC's Motion for Summary Judgment. (ECF No. 58.) In light of the Court's ruling, PwC's Request for Reconsideration of the Magistrate Judge's Ruling is DENIED as moot. (ECF No. 87.)

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2013, Plaintiff filed a putative class action against PwC alleging violations of California labor laws, including failure to pay overtime wages, failure to provide itemized employee wage statements, failure to provide meal periods, and failure to provide rest periods. (ECF No. 2.) On December 6, 2013, Plaintiff filed a First Amended Complaint asserting the same causes of action. (ECF No. 35.) On February 21, 2017, Plaintiff filed a Second Amended Complaint ("SAC") asserting only the following causes of action: (1) Violations of California Labor Code §§ 510 & 1194 for failure to pay overtime wages and (2) Violations of California Business and Professions Code § 17200. (ECF No. 54.) Essentially, Plaintiff's SAC alleges that PwC misclassified him as exempt from overtime requirements. (ECF No. 54 ¶ 11.) In addition to eliminating three of his claims, Plaintiff also limited the class to include only the following:

> All persons employed by PricewaterhouseCoopers LLP in California between June 19, 2009 and the present who: (1) assisted certified public accountants in the practice of public accountancy, as provided for in California Business and Professions Code §§ 5051 and 5053; (2) worked as first-year Associates in the "Attest" Division of the "Assurance" Line of Service ("attest associates"); (3) were not licensed by the State of California as certified public accountants during some or all of this time period; and (4) were classified by [PwC] as "exempt" employees.

(ECF No. 54 ¶ 18.) In light of this limited class definition, PwC now moves for summary judgment, arguing that Plaintiff worked no overtime hours as a first-year Associate subsequent to the June 19, 2009 start date of the putative class period, and therefore, has no standing to bring a class action lawsuit. (ECF No. 58-1.)

The parties agree on the following facts. Plaintiff worked as an Attest Associate in PwC's Los Angeles, California office from September 15, 2008 to December 1, 2010. (ECF No. 60-3 ¶¶ 1–2.) On August 3, 2009, Plaintiff went on an eight-week sabbatical leave, which consisted of (i) a ten-day vacation from August 3, 2009 through August 13, 2009, during which he was paid from his accrued and unused vacation time, and (ii) a forty-two-day sabbatical leave of absence from August 14, 2009 through September 25, 2009, during which he was paid at a rate of twenty percent of his regular monthly base pay. (ECF No. 60-3 ¶¶ 4–7.) Plaintiff did not bill any time at PwC during this eight-week sabbatical. (ECF No. 60-3 ¶ 8.) On September 28, 2009, Plaintiff

returned to active status at PwC. (ECF No. 60-3 ¶ 9.) From June 19, 2009, the start of the class period, until October 19, 2009, Plaintiff worked no overtime hours. (ECF No. 60-4 ¶ 12; ECF No. 61 at 4.)

Despite agreeing on this timeline of events, the parties dispute when Plaintiff "worked as a first-year Associate." PwC maintains that Plaintiff worked as a first-year Attest Associate from September 15, 2008 to August 31, 2009. (ECF No. 60-3 ¶ 3.) According to PwC's Director of Human Resources Operations, PwC classified Plaintiff as a second-year Attest Associate beginning on September 1, 2009, on which date all campus hires who began their employment in PwC's Attest group in Fall 2008 became second-year Associates. (ECF No. 58-4 ¶ 5.) PwC contends that despite the fact that Plaintiff was still on his sabbatical on September 1, 2009, PwC considered Plaintiff's sabbatical a period of employment for purposes of determining Plaintiff's service credit, and thus, his sabbatical did not affect his status as a second-year Associate. (ECF No. 60-3 ¶ 12.) Plaintiff, conversely, asserts that there is no job position of first-year Attest Associate or second-year Attest Associate. (ECF No. 60-3 ¶¶ 3, 11–12). Plaintiff maintains that he completed his first year of work as an Attest Associate at PwC on November 9, 2009, when he completed his first fifty-two weeks of work. (ECF No. 60-4 ¶¶ 9, 12.) In calculating his first year of work as an Attest Associate, Plaintiff excluded the time he was on sabbatical,[1] arguing that he was prohibited from engaging in work at this time. (*See* ECF No. 60-4 ¶ 6; ECF No. 60 at 10.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

---

[1] Plaintiff includes his ten-day vacation as part of this excluded sabbatical time.

*Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits or other admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the

facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

PwC moves for summary judgment, arguing that Plaintiff's claims should be dismissed because he lacks Article III standing. (ECF No. 58-1 at 9–10.) "Constitutional standing requires a plaintiff to demonstrate: (1) an injury in fact; (2) traceability, i.e., a causal connection between the injury and the actions complained of; and (3) redressability." *Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The burden of establishing these three elements falls upon the party asserting federal jurisdiction." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002). "[T]hey are an 'indispensable part of the plaintiff's case,' and accordingly must be supported at each stage of litigation in the same manner as any other essential element of the case." *Id.* (quoting *Lujan*, 504 U.S. at 561). Thus, at the summary judgment stage, the plaintiffs need only establish "that there is a genuine question of material fact as to the standing elements." *Id.*

"In a class action, named plaintiffs representing a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1211 (N.D. Cal. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

PwC argues that Plaintiff lacks an injury because the undisputed facts establish that

Plaintiff worked no overtime hours as a first-year Associate during the pleaded class period. (ECF No. 58-1 at 9–10.) PwC maintains that Plaintiff worked as a first-year Attest Associate from September 15, 2008 to August 31, 2009, and became a second-year Attest Associate on September 1, 2009 with the rest of the Fall 2008 class. (ECF No. 58-1 at 6.) Plaintiff responds that there is no "first-year Associate" job position at PwC. (ECF No. 60 at 13.) Plaintiff argues that "worked as first-year Associates" means fifty-two weeks spent actually working, and therefore, Plaintiff's sabbatical should not be included in determining the time he worked as a first-year Associate. (ECF No. 60 at 10.) In other words, Plaintiff argues that the phrase "first-year Associates" does not refer to a job title, but rather specifies a time period of fifty-two weeks working as an Associate. (ECF No. 60 at 5.) Thus, Plaintiff maintains that he worked as a first-year Attest Associate from September 15, 2008 to November 9, 2009. (ECF No. 60 at 8.)

Plaintiff's contrived definition of his pleaded class is inconsistent with its plain meaning. The phrase "first-year Associates" includes the hyphenated phrasal adjective "first-year" to modify the word "Associates." *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 1.60 (3d ed. 2013) ("A phrase functioning as an adjective in front of a noun or pronoun should ordinarily be hyphenated. . . . Ex.: A third-year associate is handling the case."). Thus, "first-year" describes a specific group of Associates, not a period of time Associates spend working. Indeed, Plaintiff's own brief demonstrates the futility of his argument. There, Plaintiff is forced to engage in linguistic gymnastics in order to fashion his argument. Rather than use the term "first-year Associate," Plaintiff argues that he worked overtime hours during his first year of work as an Associate. (ECF No. 60 at 9.) However, "worked as a first-year Associate" does not carry the same meaning as "first year of work as an Associate." The former describes a subgroup of Associates, while the latter describes a time period of one year working as an Associate.

Plaintiff's assertion that there is no formal first-year Associate job position does not change this analysis. It is clear from the evidence the most recent group of employees hired directly from college are informally considered first-year Associates, even if there is no official first-year Associate job position. (ECF No. 58-4 ¶ 4.) Thus, Plaintiff, who was hired directly from Loyola Marymount University, began working as a first-year Attest Associate on September

6

15, 2008. (ECF No. 58-4 ¶ 4.) PwC classified Plaintiff and all other campus hires who began their employment in PwC's Attest group in Fall 2008 as second-year Associates on September 1, 2009, regardless of their specific start date. (ECF No. 58-4 ¶ 5.) Plaintiff's eight-week sabbatical leave did not affect this classification as his sabbatical was "considered as a period of employment for purposes of determining service credit with PwC." (ECF No. 58-4 at 16; *see* ECF No. 58-4 ¶ 7.) Therefore, Plaintiff became a second-year Associate on September 1, 2009.

According to PwC, progression from first-year Associate to second-year Associate is generally accompanied by a pay raise, which occurs on the date PwC classifies its employees as second-year Associates. (ECF No. 58-4 ¶ 6.) For example, first-year Attest Associates who became second-year Attest Associates on September 1, 2008 and were performing as expected received pay raises effective September 1, 2008. (ECF No. 58-4 ¶ 6.) Plaintiff's employment agreement explicitly states that "[m]erit increases, if any, based on performance generally are made effective September 1" and that he was "eligible for an increase effective September 1, 2009." (ECF No. 58-4 at 7.) Thus, PwC maintains that Plaintiff would have received such a pay raise on September 1, 2009 when he became a second-year Associate. (ECF No. 58-4 ¶ 6.) However, because of the dramatic economic downturn that accompanied the Great Recession, PwC froze pay for all employees in 2009. (ECF No. 58-4 ¶ 6.)

Plaintiff may not plead ignorance to PwC's practice of grouping Associates by class year. In addition to Plaintiff's employment agreement discussing pay raises occurring on September 1, 2009, one of Plaintiff's performance reviews from 2009 repeatedly refers to Plaintiff as a "first year associate." (ECF No. 61-4 at 8–9 ("even though Yury was a first year associate;" "Even as a first year;" "I believe as a first year associate Yury is;" "although he is a first year associate").) Plaintiff read and responded to this review, (*see* ECF No. 61-4 at 9), and therefore knew that PwC referred to its employees by class year. Further, Plaintiff's counsel's briefings in the related *Campbell*[2] case explicitly acknowledged PwC's grouping of Associates by class year. (ECF No. 61-5 at 17 ("For purposes of this determination a second-year 'in charge' attest associate assisting the engagement leader in putting together an audit plan is no different than a first-year attest

---
[2] Case No. 2:06-cv-02376-TLN-AC

associate counting inventory.").) Ultimately, Plaintiff chose to use the term "first-year Associate," and he must now live with the consequences of his decision to limit the class in such a way. Plaintiff may not unilaterally redefine his class definition in an attempt to circumvent the fact that he pleaded a class definition he initially thought advantageous to his claims, but in the end left him with no injury.

Of course, even under Plaintiff's definition of "first-year Associate," Plaintiff did not work any overtime during his first fifty-two weeks of work. Plaintiff began his first day of work on September 15, 2008, and thus completed his first fifty-two weeks of work on September 13, 2009 at the latest. The parties agree Plaintiff has no actionable overtime hours through September 13, 2009. Thus, for Plaintiff to have a colorable claim for overtime, he further strains his class definition by arguing that the fifty-two weeks must exclude any time "where no work is performed." (ECF No. 60 at 4.) This exclusion is provided nowhere in Plaintiff's class definition. Moreover, Plaintiff does not explain why sabbaticals are excluded from this measurement, while presumably other absences "where no work is performed" such as sick days, holidays, vacations, and maternity or paternity leave are not. Thus, even under Plaintiff's fifty-two-week standard, Plaintiff has failed to demonstrate he suffered any injury. Therefore, Plaintiff has not shown he worked any overtime hours during the relevant class period. Accordingly, Plaintiff has suffered no injury in fact and lacks standing to bring a claim either individually or on behalf of a class.

Plaintiff asserts that "if the Court were to accept PwC's version of the class definition, Plaintiff requests the Court's permission to clarify the class definition to rule out the version of it advanced by PwC in support of its motion." (ECF No. 60 at 15.) However, Plaintiff has not even attempted to demonstrate that he has good cause to make an amendment under Federal Rule of Civil Procedure ("Rule") 16(b), nor has he attempted to demonstrate that amendment is proper under Rule 15(a). *See Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992) (A plaintiff seeking to amend his complaint after a deadline specified in the scheduling order must first show "good cause" under Rule 16(b) and then show that the proposed amendment is proper under Rule 15(a).). Accordingly, the Court denies Plaintiff's request to amend his class

definition.

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS PwC's Motion for Summary Judgment. (ECF No. 58.) In light of the Court's ruling, PwC's Request for Reconsideration of the Magistrate Judge's Ruling is DENIED as moot. (ECF No. 87.)

IT IS SO ORDERED.

Dated: December 5, 2018

Troy L. Nunley
United States District Judge